# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs October 2, 2012

## STATE OF TENNESSEE v. RONNIE INGRAM

**Appeal from the Criminal Court for Shelby County**
**No. 10-01607     Chris Craft, Judge**

**No. W2011-02595-CCA-R3-CD  -  Filed October 31, 2012**

A Shelby County Criminal Court jury convicted the defendant, Ronnie Ingram, of aggravated burglary, *see* T.C.A. § 39-14-403; theft of property valued at more than $500 but less than $1,000, *see id.* § 39-14-103, 105(2); criminal exposure to human immunodeficiency virus ("HIV"), *see id.* § 39-13-109; evading arrest, *see id.* § 39-16-603; and resisting arrest, *see id.* § 39-16-602.  The trial court imposed a total effective sentence of 32 years plus 11 months and 29 days' incarceration.  On appeal, the defendant challenges only the sufficiency of the evidence to support his conviction of criminal exposure to HIV.  Because we determine that the State failed to establish an element of the offense, we reverse the defendant's conviction of criminal exposure to HIV and dismiss that charge.  In lieu thereof, we impose a conviction of attempt to expose one to HIV and remand for sentencing on this modified conviction.  Because the defendant raises no challenge to his remaining convictions, the judgments of the trial court are affirmed in all other respects.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed in Part; Reversed and Dismissed in Part and Modified in Part; Remanded**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JEFFREY S. BIVINS and ROGER A. PAGE, JJ., joined.

Stephen C. Bush, District Public Defender; and Harry E. Sayle III, Assistant District Public Defender (on appeal); and James Hale, Assistant Public Defender (at trial), for the appellant, Ronnie Ingram.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; William L. Gibbons, District Attorney General; Abby Wallace and Chris West, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

On September 2, 2009, Memphis Police Department Officer Russell Woolley responded to the call of a "prowler" in the Annesdale Garden neighborhood of Memphis. The caller reported seeing a black male wearing black pants, a purple shirt, and a black jacket. Officer Woolley arrived to the area at approximately 2:00 a.m. and soon observed a man fitting the description, later identified as the defendant, carrying items to the middle of the street from a nearby yard. When the defendant walked back to the yard, Officer Woolley alerted nearby officers of a burglary in progress and walked to inspect the items in the street. He then observed lawn equipment and a "musical machine" among the items.

Officer Woolley recalled that an approaching squad car "spooked" the defendant as he returned to the street, and the defendant began running. In fleeing, the defendant ran directly toward Officer Woolley, who ordered the defendant to the ground. The defendant did not heed Officer Woolley's commands and instead ran in another direction away from the officers. Officer Woolley gave chase through several yards, ultimately ending up in the back yard of a nearby residence. Throughout the pursuit, Officer Woolley identified himself as a police officer and commanded the defendant to the ground.

Once in the back yard, Officer Woolley stepped into knee-high water, observed the defendant's jacket floating in the water, and immediately tripped over the defendant, who was lying in the water. Officer Woolley testified that the defendant began grabbing his ankles and hands. Officer Woolley feared the defendant was reaching for either of his two service weapons – one at his ankle and one at his waist. Officer Woolley began "striking . . . [the defendant] with a closed fist" in an effort to subdue the defendant. He then separated from the defendant to move away to a more open and safe vantage point in the back yard.

Officer Woolley testified that Officer Tracy McDonald soon arrived with her police dog named Alex. The leashed dog immediately began tracking the defendant's scent and located the defendant. After a struggle between the leashed dog and the defendant, the defendant yielded. Officer Woolley then handcuffed the defendant as Officer McDonald returned the dog to her squad car.

Officer Woolley testified that the defendant "was bleeding pretty bad[ly] from the face, from his head around his eyes, and like around the cheek area." He said, "[A]s I was walking [the defendant] back to the roadway[,] right before we got to it he turned towards me and he spit in my face." Officer Woolley testified that the defendant then told him that he was infected with HIV. Officer Woolley testified that the defendant's saliva went into his mouth, eyes, and nose. Soon after, as Officer McDonald approached Officer Woolley's squad car, the defendant told Officer McDonald, "I've got AIDS or I have HIV.

-2-

I hope your dog gets AIDS." The defendant then "tried to spit in [Officer McDonald's] direction," but the officers were "able to slam the car door quick[ly] enough where nobody else could be contaminated."

After calming down in the back seat of the squad car for a few minutes, the defendant volunteered to direct Officer Woolley to the residence from which he had stolen the items. Officer Woolley testified that the defendant said, "'[H]ey, I'll show you where I got it from, it ain't nothing but a burglary.'" After going to the residence, Officer Woolley transferred custody of the defendant to another officer and went to the hospital to have his eyes, nose, and mouth flushed. In the year following the incident, Officer Woolley underwent periodic blood tests to determine whether he had contracted HIV.[1]

Officer Tracy McDonald testified that she was trained as a "Police K-9 Handler" and that her dog, Alex, assisted in apprehending the defendant on September 2, 2009. She recalled that Alex began "pulling strong" toward a flooded area in a back yard. She said that the dog remained on a leash throughout the search for and apprehension of the defendant. She said, "Once I heard the screaming and I knew Alex made contact . . . I told the suspect let me see your hands and the dog will be removed." She explained that the dog was trained to "latch on" until commanded to release. Despite the leashed dog's biting the defendant on the head, the defendant continued to struggle. He grabbed Officer McDonald around the waist in an effort to remove her gun from her gun belt. Ultimately, the defendant relented, and Officer McDonald commanded Alex to release his hold on the defendant. Officer Woolley handcuffed the defendant while Officer McDonald returned Alex to her squad car. Because the defendant had suffered injuries during his apprehension, Officer McDonald attempted to take photographs at the scene. The defendant did not cooperate with Officer McDonald's request to document his injuries. Officer McDonald testified that the defendant told her that he had AIDS and that her dog was going to die. She recalled that the defendant was "cursing very loud[ly]" throughout the incident.

George Todd testified that police officers woke him up sometime after 1:00 a.m. on September 2, 2009, to ask if his home had been burglarized. After inspecting an adjacent garage-apartment, he discovered that small tools, a weed eater, and a cymbal bag had been stolen. He identified the items found in the street as those taken from his residence. He said that the defendant did not have permission to enter his home or take the items. He estimated their value at "about $1,000."

---

[1] From the arguments of counsel at trial, we discern that Officer Woolley had not contracted HIV as of the date of trial. The statute proscribing criminal exposure to HIV does not require that the victim contract HIV to find the defendant guilty of the offense. T.C.A. § 39-13-109(d).

The parties stipulated the authenticity and accuracy of medical records showing that the defendant had HIV. The State then rested its case-in-chief. Following the trial court's denial of the defendant's motion for judgment of acquittal, the defendant testified.

The defendant testified at trial, claiming that Officer Woolley arrested him at a bus stop, placed him in handcuffs, and then took him to an isolated area where Officer Woolley and several other officers beat him. The defendant said, "He told me if I don't plead guilty to these charges they were going to sic the dog back on me, but it was a beating happened between him and three more officers before the dog got there." The defendant claimed that "[Officer McDonald] came over and stood over top of [the defendant] shaking her butt[,] that's when the dog engaged [the defendant] while [he] was already handcuffed." After this assault, the defendant claimed Officer McDonald said "'good boy'" to the dog.

The defendant explained that he had trouble breathing following the beating and dog attack. He testified that he inadvertently coughed saliva and mucus onto Officer Woolley's chest. He claimed that he repeatedly warned the officers of his HIV status throughout the incident and apologized to Officer Woolley for coughing on his chest. He admitted learning of his HIV infection while incarcerated in 1995. The defendant denied any involvement in the burglary of the Todd residence. He claimed he was apprehended by the police, attacked, and beaten for no reason.

With this evidence, the jury convicted the defendant, as charged, on all counts. On appeal, the defendant challenges only the sufficiency of the evidence to support his conviction of criminal exposure to HIV. He claims that he accidentally, not knowingly, transmitted bodily fluids to Officer Woolley and that the State failed to establish "a significant risk of HIV . . . transmission" when he coughed on Officer Woolley. The State asserts that the evidence is sufficient to support the conviction.

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* Questions concerning the credibility of the witnesses, the weight and value of the evidence,

as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id*.

Tennessee Code Annotated section 39-13-109 provides, as is pertinent to this case, that "[a] person commits the offense of criminal exposure of another to human immunodeficiency virus (HIV) when, knowing that the person is infected with HIV, the person knowingly . . . engages in intimate contact with another." T.C.A. § 39-13-109. "'Intimate contact with another' means exposure of the body of one person to a bodily fluid of another person in any manner that presents a significant risk of HIV transmission." *Id.* §39-11-109(b)(2).

In our view, the evidence established that the defendant acted knowingly when he spat in Officer Woolley's face, exposing Officer Woolley's eyes, nose, and mouth to his bodily fluid, saliva, with the knowledge that he was infected with HIV. Officer Woolley testified that the defendant told Officer McDonald that her dog was going to die and also attempted to spit on Officer McDonald. Officer McDonald testified that the defendant was combative and cursing loudly throughout the incident, including while at the squad car when she attempted to document the defendant's injuries. The fact that the defendant, in his testimony at trial and on appeal, insists that he spat on Officer Woolley accidentally is of no consequence to our review. The jury chose to accredit the testimony of Officers Woolley and McDonald, as was their province to do. We conclude, therefore, that the evidence established that the defendant knowingly exposed Officer Woolley to his saliva.

Turning now to the defendant's claim that the State failed to establish "a significant risk of HIV transmission" by his actions, we initially note that the majority of cases concerning criminal exposure to HIV convictions reviewed by this court all involved sexual contact, either consensual or forced, between an HIV-infected defendant and a victim. *See, e.g.*, *State v. Maurice Edward Carter*, M2010-00063-CCA-R3-CD (Tenn. Crim. App., at Nashville, Aug. 2, 2011) (penetration during multiple instances of statutory rape and aggravated sexual battery), *perm. app. denied* (Tenn. Nov. 15, 2011); *State v. Tommy DeWayne Smith*, No. M2007-00932-CCA-R10-CO (Tenn. Crim. App., at Nashville, Feb. 21, 2008) (penile penetration during statutory rape and sexual exploitation of a minor offenses), *perm. app. denied* (Tenn. May 5, 2008); *State v. Bonds*, 189 S.W.3d 249 (Tenn. Crim. App. 2005) (anal penetration of 13-year-old male by HIV-infected defendant), *perm. app. denied* (Tenn. Feb. 21, 2006); *State v. Michael Danelle Harvey*, No. W2001-01164-CCA-R3-CD (Tenn. Crim. App., at Jackson, May 31, 2002) (consensual vaginal intercourse between 14-year-old victim and HIV-infected defendant); *State v. Robert Morrow*, E2000-02796-CCA-R3-CD (Tenn. Crim. App., at Knoxville, Sept. 18, 2001) (two counts of aggravated rape

involving vaginal penetration), *perm. app. denied* (Tenn. Mar. 11, 2002); *State v. Martin Charles Jones*, No. E1999-01296-CCA-R3-CD (Tenn. Crim. App., at Knoxville, Jan. 12, 2001) (consensual sexual intercourse), *perm. app. denied* (Tenn. Sept. 10, 2001); *State v. Pamela Denise Wiser*, No. M1999-02500-CCA-R3-CD (Tenn. Crim. App., at Nashville, Oct. 30, 2000) (22 counts of criminal exposure to HIV all involving consensual sexual intercourse), *perm. app. denied* (Tenn. May 21, 2001). Indeed our review reveals only a single case in this state involving saliva transmitted via a bite, and our review in that case emanated from a sentencing challenge following a guilty plea to the offense. *State v. David Schroeder*, E2010-01210-CCA-R3-CD (Tenn. Crim. App., at Knoxville, Jan. 13, 2011) (guilty plea to criminal exposure to HIV when defendant bit a hospital employee and broke the victim's skin), *perm. app. denied* (Tenn. May 25, 2011).

We observe that, in reviewing the sufficiency of the evidence to establish the element of serious bodily injury in an aggravated robbery conviction, our supreme court recently opined that "[b]ecause in many cases a layperson does not have the necessary medical knowledge to determine whether a particular injury involves a substantial risk of death, expert medical testimony is frequently of critical importance in establishing that fact." *State v. Michael Farmer and Anthony Clark*, __ S.W.3d __, No. W2009-02281-SC-R11-CD, slip op. at 6 (Tenn. Aug. 22, 2012). Likewise, we determine that "a layperson does not have the necessary medical knowledge to determine" whether the HIV-infected defendant's spitting into the officer's face created "a significant risk of HIV transmission" and, therefore, expert medical testimony concerning whether the defendant's actions in this case posed "a significant risk of HIV transmission" was critical to the State's establishing this necessary element of criminal exposure to HIV.

In *Bonds*, the State presented expert testimony concerning the risks associated with certain unprotected sexual behavior in HIV-infected persons. *Bonds*, 189 S.W.3d at 254, 260 (noting that "[i]t is 'generally known' that HIV is 'spread by the transfer of bodily fluids such as blood, genital secretions, and *perhaps saliva*.'"*)* (citations omitted) (emphasis added)*; see also State v. Price*, 843 N.E.2d 847, 849 (Ohio Ct. App. 2005) (expert testimony established that the risk of HIV transmission "would be low or remote" when an HIV-infected defendant spit into the mouth of another individual). Likewise, in *Michael Danelle Harvey*, an expert testified concerning the risks associated with engaging in sexual activity with an HIV-infected person. *Michael Danelle Harvey*, slip op. at 2. In the present case, the State presented no evidence concerning the risk of HIV transmission. In the absence of such testimony, we conclude that the State failed to establish that the HIV-infected defendant's spitting saliva into the officer's face posed a significant risk of transmission, as required by our Code.

Thus, the conviction of criminal exposure to HIV must be reversed, and that

specific charge must be dismissed. The charging instrument, however, in charging the conviction offense, also charged the lesser included offense of attempt to expose one to HIV. *See Delivetrick D. Blocker v. Jim Worthington, Warden*, No. E2008-00881-CCA-R3-HC, slip op. at 5 (Tenn. Crim. App., Knoxville, Feb. 9, 2009) ("We conclude the Petitioner's indictment for especially aggravated robbery was sufficient to place the Petitioner on notice of attempted especially aggravated robbery, to provide the trial court a basis upon which to enter a conviction for attempted especially aggravated robbery, and to protect the Petitioner from double jeopardy."); *see also Strader v. State*, 362 S.W.2d 224, 227 (Tenn. 1962) ("[W]hen one is put on trial on a single charge of felony, he is also on trial for all its lesser included offenses, as the facts may be."). "A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense[,] . . . [a]cts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part. . . ." T.C.A. § 39-12-101(a)(2). Based upon the circumstances of (1) the officer's description of the defendant's intentional spitting at the officer, (2) the defendant's statement, accompanying the expectorating, that he was infected with HIV, and (3) the defendant's statement that he hoped the police dog contracted "AIDS" or HIV from biting the defendant, we hold that the evidence sufficiently established that the defendant, acting with intent to cause a result of exposing the officer to HIV, an element of the greater offense charged, believed the conduct would cause the result without further conduct on his part. We believe the (a)(2) mode of attempt proscribes, for instance, a person's attempt to kill another by pulling the trigger of an unloaded gun that the putative shooter believed to be loaded and capable of killing the other person. We believe that, likewise, the (a)(2) mode of attempt proscribes the defendant's actions in the present case. For that reason, we impose a conviction of attempt to expose one to HIV. The case must be remanded for sentencing as to this new conviction offense.

Accordingly, we reverse the defendant's conviction of criminal exposure to HIV and dismiss the charge. We impose in its stead a conviction of attempt to expose one to HIV and remand for sentencing on this count. Because the defendant has not challenged the remaining convictions on appeal, the defendant's convictions of aggravated burglary, theft of property, evading arrest, and resisting arrest remain intact.

_____
JAMES CURWOOD WITT, JR., JUDGE